UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| L. V. King, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:20-CV-939-JD |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security | ) ) ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

L. King applied for disability insurance benefits, alleging that she is unable to work primarily due to degenerative disc disease, arthritis, cervical spine and vertebral fusion, anxiety disorder, and chronic migraines. Ms. King was found to be not disabled in an October 2017 decision. The decision was remanded by the Appeals Council in April 2019, with instructions for the ALJ to properly evaluate the opinion of the state agency psychologist. Ms. King was again found to be not disabled in a November 2019 decision. Ms. King then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Ms. King then filed her reply. As explained below, the Court remands the Commissioner's decision.

**I.      Factual Background**

Until she stopped working, Ms. King held a variety of jobs, most recently as a packer. (R. 341). Ms. King suffers from post-laminectomy syndrome; status post C5-6 and L4-5 fusion; mild coronary artery disease; headaches; major depressive disorder and anxiety. (R. 153). Ms. King applied for benefits in 2015. She alleges disability starting October 13, 2014, and she meets the

1

insured status requirements of the Social Security Act through December 31, 2019. (R. 151, 153). The ALJ issued an unfavorable decision on October 25, 2017. The Appeals Council remanded the decision to the ALJ with the following instructions:

> Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In doing so, evaluate the non-treating source opinion pursuant to the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the non-treating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1520b).

(R. 171). The ALJ issued a second unfavorable decision on November 15, 2019. In that decision, the ALJ found that Ms. King suffers from post laminectomy syndrome; status post cervical fusion; minimally invasive lumbar fusion; degenerative disc disease of the cervical and lumbar spines; coronary artery disease; carpal tunnel syndrome; migraine headaches; benign positional vertigo; depression; anxiety; and posttraumatic stress disorder (PTSD). The ALJ then made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes or scaffolds; never climb stairs; occasionally twist; occasionally climb ramps, balance, stoop, kneel, crouch and crawl; never have exposure to unprotected heights or moving mechanical parts; no commercial driving; limited to moderate noise as defined in the SCO; never have exposure to extreme cold as part of job duties; can carry out simple tasks with simple work-related decisions and judgments performing these tasks with adequate concentration, persistence and pace in two-hour segments allowing for normal breaks; occasional interaction with supervisors and coworkers; no interaction with the public as part of the job duties; never overhead reach with the bilateral upper extremities and frequently handle, finger and feel with right upper extremity.

(R. 25). Finding that Ms. King can perform other work in the economy, the ALJ found that she is not disabled. The Appeals Council declined review, and Ms. King filed this action seeking judicial review of the Commissioner's decision.

**II.     Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

**III.     Standard for Disability**

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past

work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

IV.   Discussion

Ms. King offers two arguments in support of reversal. She argues that the ALJ improperly relied on outdated opinions from non-examining physicians while failing to properly explain why he did not rely on the opinions of examining and treating physicians, and that the ALJ failed to properly account for her moderate limitations in concentrating, persisting, and maintaining pace. The Court only addresses Ms. King's first argument because it agrees that the ALJ erred in relying on outdated medical opinions. The parties can address any remaining arguments on remand.

Ms. King argues that the ALJ erred in providing "great weight" to the state agency physicians, which were given 4 years before the most recent decision. The state agency physicians provided their opinions on July 22, 2015, and September 17, 2015. (R. 135, 147). The ALJ gave the state agency medical opinions great weight, finding that the opinions support the RFC. (R. 34). The ALJ stated that he included other non-exertional limitations to further support her impairments. (R. 34). Ms. King argues that the ALJ erred in relying on the state agency opinions, when the state agency consultants did not examine Ms. King and did not review all of her treatment records. *See Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (citing *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (criticizing the ALJ's reliance on consulting

5

physicians' conclusions that were based on incomplete medical record).

The state agency consultants provided their opinion in 2015, but subsequent imaging and medical evidence indicates her impairments were worsening. The imaging available to the state agency consultants from 2014 and 2015 indicated well-healed fusion, but with some fluid and a central small disc herniation at L5-S1 without significant nerve root impingement. (R. 551, 562). However, by August 2016, the L5-S1 central disc protrusion was beginning to displace the S1 nerve roots peripherally. (R. 1285). Imaging from November 2016 of her lumbar spine indicates slight mild facet arthrosis, mild left facet hypertrophy, mild right foraminal stenosis, and "proximal aspect of the left neural foramen is moderately stenotic." (R. 1330). The imaging again indicates a small central protrusion at L5-S1. An MRI of Ms. King's cervical spine, also in November 2016, shows loss of cervical lordosis, small anterior marginal spurs, moderate left facet arthrosis, mild right facet arthrosis, and mild disc degeneration. (R. 1331). In April 2017, imaging of the lumbar spine showed mild degenerative arthritic change with marginal spurring. (R. 1573). By August 2017, imaging showed multilevel mild disc degeneration, as well as minimal disc bulges at both C4-5 and C6-7. (R. 1725). In September 2018, the L5-S1 again showed the small central protrusion, along with mild left facet hypertrophy, severe left proximal foraminal stenosis, and moderate right proximal foraminal stenosis. (R. 1718). Her L3-4 also showed mild bilateral facet arthrosis. (R. 1718). The imaging shows continued worsening of her spine despite her fusion surgeries, but the state agency consultants did not have access to this evidence.

Furthermore, there is evidence of new invasive treatments, like a permanent spinal cord stimulator, that were started after the state agency consultants provided their opinion. (R. 1237). Ms. King had a permanent spinal cord stimulator placed in October 2015, which required

6

frequent reprogramming to combat her pain. (R. 1237, 1244, 1246, 1255, 1259). The state agency consultants had no access to this information, nor were they able to access treatment notes regarding her continued pain, especially cervical pain, despite using the spinal cord stimulator. (R. 1244). Such continued invasive treatments indicate a worsening of symptoms and impairments after the state agency consultants provided their opinions.

The Commissioner asserts that the ALJ considered this imaging but found that her physical examinations from the same time period remained normal. (R. 34). The Commissioner argues that the ALJ properly considered the newer evidence in the RFC analysis and therefore did not err in relying on the outdated assessments. In doing so, the Commissioner relies on *Trammell v. Colvin,* No. 12 CV 6780, 2014 U.S. Dist. LEXIS 38717 (N.D. Ill. Mar. 25, 2014). Here, the ALJ does not specifically discuss the physical examinations after 2015 in his analysis of the agency opinions. He does, however, discuss the evidence earlier in the opinion when listing medical evidence. The Commissioner asserts that the ALJ's consideration of the new evidence in the RFC is enough under the case law in *Trammell,* which found that an ALJ did not err in relying on outdated opinions because she "considered the more recent test results at length in evaluating [the plaintiff's] RFC." *Trammell,* 20. 12 CV 6780, 2014 U.S. Dist. LEXIST 38717, at *22. However, *Trammell* was decided in 2014, and the Seventh Circuit has since held that an ALJ's assessment of new evidence does not mitigate the error in relying on outdated assessments if the later evidence could have changed the reviewing physicians' opinions. *Moreno v. Berryhill,* 882 F.3d 722, 728 (7th Cir. 2018). Therefore, the ALJ acknowledging the more recent evidence does not cure the error in relying on outdated medical opinions. *Id.* This error is especially problematic because the ALJ only gave great weight to the state agency consultants' opinions, and therefore relied solely on opinions that did not have all the relevant medical

evidence.

The ALJ also fails to provide support from the medical evidence that her physical examinations remained normal after 2015. The ALJ only states that "there are times on physical examination" where she retained normal range of motion with intact strength and intact sensation. (R. 34). However, the ALJ noted that these normal physical examinations were with regard to her upper and lower extremities. This provides no discussion of Ms. King's continued complaints of lumbar and cervical pain. The medical record does not indicate that all physical examinations were normal, particularly with regard to her lumbar and cervical pain. A physical therapy screening in September 2015 showed limited range of motion in the cervical spine, tenderness, and a positive cervical distraction test (indicating nerve root compression and facet joint pressure).[1] (R. 1223). In November 2015, she was noted to have neck pain radiating to her shoulder, left arm, and fingers. (R. 1244). While the ALJ is correct in noting that the examinations show normal range of motion and strength in her lower extremities and lumbar back (which was being treated with a permanent spinal cord stimulator for pain), there is no indication of the range of motion in her cervical spine at any examinations. (R. 1244-46, 1250-51). In January 2016, her treating physician noted that despite regular reprogramming of the spinal cord stimulator, Ms. King reported not receiving enough pain relief. (R. 1255). Such findings do not indicate normal physical examinations.

The findings of intact sensations and strength and normal range of motion in the extremities noted by the ALJ all occur in a standard form, and the findings do not appear to change at all over time. (R. 1245-46, 1250-51, 1260-61, 1275-76, 1282-83). However, the narratives from those treatment notes indicate that her pain management team believed her

---

[1] https://www.physio-pedia.com/Cervical_Distraction_Test (last visited January 12, 2022).

symptoms to be worsening, as they regularly changed her medications and worked on reprogramming her spinal cord stimulator. (R. 1246-47, 1259, 1265, 1266-69). This again supports a worsening of symptoms after 2015, but that evidence was not available to the state agency consultants.

The ALJ did state that he provided for the limitations shown in the later evidence by limiting her to occasional twisting and no climbing based on the medical evidence showing "*some* limited range of motion and … some degenerative disc disease." (R. 34, emphasis in original). However, the ALJ does not indicate why or how those limitations would adequately accommodate her continued reports of lumbar and cervical pain. More problematically, the ALJ seems to understand that the new evidence requires further limitations, but he chose to interpret that medical evidence himself rather than submit the evidence to another medical expert. The ALJ erred in making medical determinations himself rather than submitting the new evidence to a medical expert. *See Akin v. Berryhill*, 887 F.3d 314, 318 (7th Cir. 2018) (citing *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000)); *Ronald W. v. Saul*, No. 17 CV 8536, 2019 U.S. Dist. LEXIS 140162, at *26-29 (N.D. Ill. Aug. 19, 2019) (The ALJ erred by determining the significance of new medical evidence himself, despite agreeing that the new evidence showed the need for greater limitations than suggested by the outdated state agency consultant opinions). The ALJ erred in relying on outdated medical source statements when new medical evidence showed new treatments and new imagining indicating a worsening of symptoms, requiring remand.

The ALJ erred in relying on outdated medical opinions. On remand, the ALJ must properly weigh the evidence and submit the new evidence to medical experts. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: January 21, 2022

/s/ JON E. DEGUILIO
Chief Judge
United States District Court
